In the Matter of the Adoption of LOUISE J. ANDERSON a Child Under Sixteen Years of Age.

Children's Court, Westchester County, September 23, 1946.

*David Gorfinkel* for petitioners.

*Anthony E. Maglio* for child's mother.

SMYTH, J.  The infant, Louise June Anderson, who was born December 22, 1944, has resided in the county of Westchester continuously from February, 1946, until the present time.  The petition herein alleges that said child is neglected and abandoned as defined by subdivisions 4 and 5 of section 2 of the Children's Court Act (L. 1922, ch. 547, as amd.), and prays that the child be so adjudged, and that petitioners be permitted to adopt her. The petition complies with the provisions of the Domestic Relations Law relating to adoption proceedings, and also states facts sufficient to bring the child within the jurisdiction of the court, as an allegedly neglected child.

The circumstances disclosed by the testimony are quite unusual.  The child was born out of wedlock, as the mother's husband had been overseas on military service for more than one year prior to the birth (Domestic Relations Law, § 119). The mother cared for the child during the first four months of its life.  As the time was approaching when her husband would return home, the mother, desiring to conceal the existence of the child from him, consulted with a Mrs. Barker who recommended a Mrs. Tompkins as a suitable person to adopt the

child. Thereupon, without investigating Mrs. Tompkins, the mother went with these two women to a lawyer's office, executed a consent to the adoption, and placed the child in the care and custody of Mrs. Tompkins in the month of April, 1945. This step of placing the child with Mrs. Tompkins was one which the mother had the legal right to take (Social Welfare Law, § 375), but so far as the attempted adoption is concerned, it should be observed that it was abortive. Mrs. Tompkins being a married woman, could not adopt the child without her husband's consent (Domestic Relations Law, § 110), and he was also overseas on military service. When he returned home a few months later, he objected to the child's presence in the home. Thereupon Mrs. Tompkins consulted Mrs. Barker, and the latter recommended the petitioners herein, Mr. and Mrs. Severance, as suitable foster parents for the child. Mrs. Tompkins was not acquainted with the petitioners and made no independent investigation of them. Acting solely on the advice of Mrs. Barker, she, in the month of February, 1946, turned the child over to the petitioners for adoption, and went with Mrs. Barker and Mrs. Severance to the same lawyer who officiated when the consent to adoption was signed by the mother, in order that he might represent the petitioners in the matter of adopting the child. This act of Mrs. Tompkins in placing the child out was in violation of law (Social Welfare Law, § 374) and from that moment the child could be regarded as a neglected child. (Children's Court Act, § 2, subd. 4, cls. [a], [c].)

This step was accomplished without the knowledge or consent of the child's mother, and the child remained in the home of petitioners herein until April, 1946, without her knowledge or consent. About that time Mrs. Barker informed the mother that Mrs. Tompkins had given the child to petitioners, and it is evident from the testimony that Mrs. Tompkins had repented of her said action and wished to recover possession of the child. The mother did nothing about it when first advised by Mrs. Barker, and subsequently Mrs. Tompkins came and told her she would like to get the baby back. Thereupon, at the request of Mrs. Tompkins, the child's mother commenced habeas corpus proceedings in the Supreme Court, Westchester County, to recover possession of the child, not for herself, but for Mrs. Tompkins, through an attorney selected and paid for by Mrs. Tompkins. The matter was heard before the Honorable FREDERICK P. CLOSE, Official Referee, on September 5, 1946, and at the conclusion of the hearing, the court reserved decision. Meanwhile, the petition above mentioned had been filed in this court on or about June 27, 1946. A summons was issued out

of this court, directed to the mother and was served on her on July 8, 1946.

This court, at that time, was unaware of the pendency of the habeas corpus proceedings. The matter came on for a hearing in this court on September 12, 1946. The petitioners and the child's mother appeared, were represented by counsel, and testified. Counsel informed the court that the Official Referee had reserved decision pending the hearing and determination in this court, and stipulated in open court that the testimony taken before him on September 5th be received in evidence, and form part of the record of this proceeding. The testimony considered herein consists of that taken before the Official Referee on September 5th, and before this court on September 12th. Considerable testimony was taken as to the suitability of Mr. and Mrs. Tompkins and of the petitioners herein to become the foster parents of the infant. However, if there is to be an adoption, the law requires that the court appoint a qualified disinterested person to investigate and report (Domestic Relations Law, § 112), and that question need not and should not be determined at this time.

It is my opinion that the child may not be adjudged abandoned within the meaning of that term as defined in subdivision 5 of section 2 of the Children's Court Act. The child was lawfully placed with Mrs. Tompkins by the mother, and was not left destitute nor in a condition of want and suffering. The mother testified she visited the child at least twice, the last visit being in November, 1945. A period of one year has not elapsed without the child's being visited by the mother.

I am also of the opinion that the child is neglected as defined by law, and should receive the protection of the court. Under subdivision 4 of section 2 the term " neglected child " means among other definitions, a child (a) who is without proper guardianship; (b) whose parent, guardian or person with whom the child lives by reason of cruelty, mental incapacity, immorality or depravity is unfit to properly care for the child. The phrase " without proper guardianship " is not defined, but obviously it means some condition other than unfitness due to cruelty, mental incapacity, immorality or depravity. The mother surrendered the child to strangers because of her desire to shield it from her husband's view. She has also withheld from the child all maternal care from April, 1945, to date. During the period, through her omission to exercise such maternal interest, no steps were taken by her to see that the adoption by Mr. and Mrs. Tompkins was completed. So detached was she from the scene that she did not know Mrs. Tompkins had turned the

child over to petitioners. When that fact was reported to her, she did not desire the child returned to her, and even now is unable to receive the child back. Acting on Mrs. Tompkins' request, she commenced proceedings to remove the child from a good home and return her to Mrs. Tompkins, concerning whom she knew very little. When the child came into the hands of the petitioners she was suffering from rickets. It takes about six months for this disease to develop, and it was moderately advanced at that time. The petitioners secured the services of a competent physician, and the child was cured of the disease.

During the period the child has been with the petitioners, she has received excellent care, but has been without legal and, consequently, in the eyes of the law, proper guardianship. The practice of handing children about in the haphazard, careless manner followed in this case, and without observing the safeguards with which the law seeks to surround adoption proceedings should not be encouraged or countenanced.

Consequently, the court adjudges this child neglected, in that it is found without proper guardianship. The consent of the mother who has thus caused the child to be neglected may be dispensed with in this adoption proceeding (Domestic Relations Law, § 111).

The court will direct that the child be left temporarily in the care and custody of the petitioners, subject to the further orders of the court, and will appoint Mrs. Helen C. Young, Director of the Department of Child Welfare, to investigate and report as to the propriety of approving the adoption of the child by petitioners (Domestic Relations Law, § 112).

The court will also receive a petition from Mr. and Mrs. Tompkins to be permitted to adopt the child if they desire to submit one, and if same is filed will cause a similar investigation and report to be made. Thus all parties will be assured of their day in court, and the best interests and welfare of the child which are of paramount concern, will be fully considered.